## KAYLOR et al. v. KAYLOR.

No. 24441.   May 14, 1935.

Rehearing Denied June 11, 1935.

James M. Hays, Joseph C. Hays, and James M. Hays, Jr., for plaintiffs in error.

R. J. Bollman, for defendant in error.

PER CURIAM. The parties to this action will be referred to as they appeared in the lower court.

The record in this case discloses that on June 20, 1927, a certain promissory note was executed and delivered by Harry Kaylor to Forrest F. Kaylor, a brother of Harry Kaylor, for the sum of $1,687.30, bearing interest at the rate of 7 per cent. per annum, and further providing for a reasonable attorneys' fee; that as a part and parcel of the same transaction, the said Harry Kaylor entered into a written agreement with Forrest F. Kaylor, wherein he agreed, among other things, as follows:

"Whereas, the parties hereto are brothers and the sons of Marvilla Kaylor, and whereas, Marvilla Kaylor has made a will whereby she has designated that her children shall share equally in her estate, and whereas the party of the second part, under said will, will probably inherit a considerable amount of property from the estate of Marvilla Kaylor, and whereas, the party of the first part has loaned party of the second part $1,687.30, as evidenced by one promissory note dated June 20, 1927.

said note bearing interest at the rate of 7 per cent. from date. Now, therefore, it is mutually agreed between the parties hereto that in case party of the second part fails to pay party of the first part the indebtedness evidenced by the said promissory note heretofore mentioned: That this agreement shall operate as an assignment of the interest of party of the second part in and to the estate of Marvilla Kaylor, under the will of Marvilla Kaylor, to the extent of said indebtedness. It is further mutually agreed between the parties hereto that this contract is intended to secure the loan above mentioned, made by party of the first part to party of the second part, and in case said notes are paid in accordance with the terms and tenor of said note, then this agreement is to be null and void, otherwise, to remain in full force and effect.

"It is further agreed between the parties hereto, that in case the party of the second part shall fail to pay indebtedness referred to in this agreement, that the filing of said agreement with the executor or administrator with will annexed of Marvilla Kaylor, shall authorize said administrator or executor to pay the party of the first part out of the share of the said estate belonging to party of the second part, the amount of said note hereto referred to, together with 7 per cent. interest from date until paid."

This agreement was executed and delivered for the purpose of securing a debt, and an agreement purporting to assign the interest in an estate of a living ancestor for the purpose of securing a debt will be construed as a mortgage and must be foreclosed in like manner as other mortgages.

Both parties to this contract or agreement treated it as a mortgage. Written instruments will be construed so as to give the true intention of the parties to said instrument when same can be done consistently with the law.

The record discloses the fact that Harry Kaylor and Forrest F. Kaylor were brothers, and the sons of Marvilla Kaylor; that Marvilla Kaylor had executed a will wherein the two brothers were to share equally in her estate; that Harry Kaylor borrowed from his brother, Forrest F. Kaylor, the sum of $1,687.30, and in order to secure this borrowed money, made an assignment of his part of the estate of Marvilla Kaylor, or so much thereof of said estate as would pay said borrowed money. The record further discloses that the will under which said assignment was made was lost or destroyed, and a new will made by Marvilla Kaylor. In said latter will she willed part of the same estate to the said Harry

Kaylor. A careful reading of the contract of assignment made for the purpose of securing the money borrowed will, in our opinion, show that it was the intention of both parties to this contract to assign the estate which would eventually belong to the assignor, Harry Kaylor, and that the will was only an incident to this assignment. It is therefore held that an assignment assigning the interest in an estate of a living ancestor under a will, when executed for a valuable consideration, will be enforced by a court of equity when the assigned interest comes into the hands of the assignor, notwithstanding the will may be destroyed or lost, the will being only an incident to the agreement or assignment of the estate. To hold otherwise would be an invitation for the practice of fraud.

In the case of Bridge et al. v. Kedon, 126 P. 149, the Supreme Court of California, on August 9, 1912, in the second paragraph of the syllabus says:

"An assignment of a mere possibility, such as that of an heir in the estate of his living ancestor, is good in equity, as is one of a vested interest in property to come into existence in the future."

Again, in the fourth paragraph of the syllabus, Justice Shaw said:

"The right created by the assignment, as security, of one's expectancy in the estate of his living ancestor, being a present equitable charge which, when the descent is cast, at once ripens into a 'lien' on the property. * * *"

In the body of the opinion it is stated:

"Under these authorities, there can be, no doubt that the grant or assignment of Kedon to Bridge of his expectancy as security for the loan was valid to the extent of the sum loaned, and reasonable interest thereon, and that it may be enforced against the part of his mother's estate which on her death descended to Kedon, unless it is barred by the discharge in bankruptcy."

In the Case of Clendening v. Wyatt et al. (Kan.) 38 P. 792, in the first and second paragraphs of the syllabus, it is stated:

"The expectancy of an heir in an ancestor's estate may become the subject of contract, and may be assigned in equity. Courts of equity will uphold such an agreement of an heir apparent, where it is fairly made, and for an adequate consideration. If no unjust advantage is taken of the necessities or indiscretion of the heir, and if the agreement is not unconscionable, and is not obtained by fraud or oppression, it may be enforced in equity after the death of the ancestor.

"The contract made by the heir apparent in the present case examined, and held to be valid and effectual."

In section 7409, C. O. S. 1921 (10943, O. S. 1931), we have the following:

"Lien on Future Interest. An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest."

Section 5257, C. O. S. 1921 (9678, O. S. 1931), reads:

"All rights of a mortgagor or grantor in and to the premises described in the instrument and existing at the time or subsequently accruing, shall accrue to the benefit of the mortgagee or grantee, and be covered by his mortgage or conveyed by his deed, as the case may be."

In the 27 Cyc. at page 976, it is stated:

"Generally, whenever a transaction resolves itself into a security, or an offer or attempt to pledge land as security for a debt or liability, equity will treat it as a mortgage, without regard to the form it may assume."

And on page 983 it is said:

"On the well-settled doctrine that a court of equity will regard that as done which ought to have been done, it is held that a contract or agreement whereby a party promises in the future to execute and give a mortgage on specific property, if it is unambiguous and founded on a sufficient consideration, and identifies the property to be charged with due certainty, will be treated in equity as equivalent to the creation of the mortgage itself, and will be enforced as a specific lien on the property described."

It is a well-settled doctrine, in the state of Oklahoma, that one knowingly having received and accepted the benefits of any part of a conveyance, mortgage, or contract, relating to real estate, shall be concluded thereby, and estopped to deny the validity of such conveyance, mortgage, or contract, or the authority to make and execute the same, unless it would be on the account of fraud.

"Any person or corporation having knowingly received and accepted the benefits or any part thereof of any conveyance, mortgage or contract relating to real estate, shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract, or the power or authority to make and execute the same, except on the ground of fraud."

It is also well settled that an unrecorded real or chattel mortgage, or assignment of interest, is binding between the assignor and assignee, and all persons having actual knowledge of same. In the case of Blevins et al. v. W. A. Graham Co., 72 Okla. 308, 182 P. 247, the court treats at length the question of an unrecorded mortgage relating to "purchasers in good faith":

"If a literal interpretation is placed upon this section, an unrecorded mortgage upon personal property situated in unorganized counties is void as to purchasers in good faith, but a mortgage upon property situated in organized counties is void as to purchasers in bad faith. Section 4035 (Rev. L. 1910) provides that a chattel mortgage shall cease to be valid as against subsequent purchasers or incumbrancers in good faith after the expiration of three years from filing for record, unless a renewal certificate is filed. We cannot believe that the Legislature of Oklahoma intended to inaugurate a new policy or to declare that one who knew of an existing incumbrance might ignore it and acquire property free from any lien, if he but paid some consideration to the seller. Nor was it intended that one rule should apply in organized counties, and the opposite rule in unorganized counties, nor one rule as to the real estate mortgages, and its opposite as to chattel mortgages. The purpose of the statute was to give constructive notice to those whose dealings were in good faith, and who had no actual knowledge of the facts. The words 'purchasers, and incumbrancers for value' in the first portion of section 4031 (Rev. L. 1910) are used in the same sense as the words 'purchasers, or incumbrancers of the property in good faith for value' in the remainder of the section."

The record discloses that in December, 1931, or January, 1932, the plaintiff discussed with Harry Kaylor this assignment of interest in the estate of Marvilla Kaylor, and the defendant Maxine Kaylor Dougherty was present during the discussion. The record also discloses that the conveyance of this estate to Maxine Kaylor Dougherty was not made until March 31, 1932. Maxine Kaylor Dougherty undoubtedly knew from this discussion that the interest of Harry Kaylor in the estate of Marvilla Kaylor was assigned to Forrest F. Kaylor as security for the money loaned to Harry Kaylor. Therefore, Maxine Kaylor Dougherty took the deed of conveyance to this property with actual knowledge of the assignment or mortgage of Harry Kaylor to Forrest F. Kaylor, and is not a pur-

chaser or a creditor in good faith. It is therefore held that Maxine Kaylor Dougherty was not a purchaser or creditor of Harry Kaylor in good faith, and that the deed of conveyance should be canceled and held for naught.

We have examined the authorities cited in the brief submitted by the plaintiffs in error, and are of the opinion that the authorities cited are not applicable to this case, and having examined the record and the law applicable in this case, we find no prejudicial error, and are of the opinion that this case should be affirmed, with the direction that the executor, Forrest F. Kaylor, proceed to sell the interest of Harry Kaylor in the estate of Marvilla Kaylor, deceased, under the law applicable to the foreclosure of mortgages, and apply same to the payment of the note executed and delivered to Forrest F. Kaylor in the amount of $1,687.30, with interest thereon and attorney fees. It is so ordered.

The Supreme Court acknowledges the aid of Attorneys J. A. Minton, Oscar Speed, and Fred B. Cornels in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Minton and approved by Mr. Speed and Mr. Cornels, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and BAYLESS, BUSBY, WELCH, CORN, and GIBSON, JJ., concur.