### McMAHON v. FOLEY.

No. 29304.   Sept. 17, 1940.

Rehearing Denied Dec. 24, 1940.

Application for Leave to File Second Petition for Rehearing Denied March 4, 1941.

*111 P. 2d 1076.*

C. B. McCrory and M. Dettweiler, both of Okmulgee, and G. G. Martin, of Franklin, Pa., for plaintiff in error.

A. L. Emery, of Okmulgee, for defendant in error.

DAVISON, J. This cause is presented on appeal from the superior court of Okmulgee county, Okla. It was instituted in that court on the 2nd day of November, 1936, by W. T. Foley, as plaintiff, against Delia McMahon. It involves a controversy over a fractional interest in an estate accumulated by William T. Foley and Julia A. Foley, husband and wife (both now deceased). The plaintiff claims as an heir through the husband's brother, Daniel D. Foley. The defendant claims by virtue of an assignment from the husband's brother made subsequent to the death of William T. Foley and prior to the death of Julia A. Foley.

William T. Foley died intestate in Okmulgee county, Okla., in October, 1928. He was survived by his wife, Julia A. Foley, and his brother, Daniel D. Foley, and other brothers and a sister. There were no children.

During their married life, William T. Foley and Julia A. Foley had accumulated, as a result of their joint efforts, certain property (a detailed description of which is unnecessary to a determination of this controversy). In April of 1930, Daniel D. Foley executed an assignment intended to transfer to Delia McMahon:

"Any and all interest which I now own, or may hereafter acquire, whether as an heir or by will, in the estate of W. T. Foley, deceased, formerly of Okmulgee, Oklahoma, whether real, personal or mixed, and wheresoever situated or located."

The recited consideration was one dollar.

Julia A. Foley died July 7, 1936. By the terms of her will she devised to her own blood relatives the estate which she had acquired at the death of her husband.

The Foley heirs were dissatisfied with the testamentary disposition and entertained the view that it could not be sustained as a matter of law. A compromise agreement in writing was made and executed between the Foley heirs, joined by Delia McMahon and the devisees and legatees, whereby one-fourth of the net estate of Julia A. Foley should go to the Foley heirs and assigns.

In the compromise agreement the existence of the dispute between the parties to this litigation was recognized and provision made to preserve the fractional portion involved until the dispute should be determined. In the compromise agreement it was provided:

"It appears that Delia McMahon of the second part claims by written instrument of April 12, 1930, of record in Book 420 at page 84, the interest of D. D. Foley, deceased, and W. T. Foley, of Okmulgee, Oklahoma, claims the same interest by inheritance through his father, the said D. D. Foley, now deceased; and that in order to comply with the terms and conditions of this agreement by the parties hereto insofar as it relates to said two parties, it is necessary that there be some determination who is the owner of said interest, and it is agreed that said interest shall be held in escrow by the executor, as stakeholder for said two parties, until such determination."

It is agreed that the fractional interest involved in this dispute constitutes 1/7 of 1/4 or 1/28 of the estate.

We shall defer for the present the discussion of additional facts which claim a degree of consideration in determining particular points involved in this controversy.

On trial of the cause to the court without the intervention of a jury, it was decided that the assignment was an attempted transfer of an heir's expectancy, and therefore void in law, and that it (the assignment) was not accompanied by circumstances which would render it enforceable in equity. Accordingly, the judgment of the trial court was for the plaintiff. The defendant has appealed, appearing herein as plaintiff in error. Our continued reference to the parties will be by their trial court designation.

The defendant, in presenting the case on appeal, asserts the validity of the assignment, and in doing so takes what may be best described as an alternative position, asserting first, in substance, that the interest assigned was not one in expectancy of a prospective heir, but was more in the nature of a vested interest subject to defeasance, and was therefore not within the common-law rule declaring void the assignment of an expected interest by a prospective heir. In the alternative it is asserted in substance that even though the assignment should be classified as an attempted transfer of an expectancy, the same is enforceable in this jurisdiction. And that the trial court erred in refusing to uphold the validity thereof.

With respect to the first mentioned contention defendant states:

"The plaintiff, as did the trial court, labors under the false impression that the statute vested no right or interest of any character in the husband's surviving heirs upon his death. In so contending, the plaintiff erroneously conceives that the postponement of the right of possession, or to the enjoyment thereof, postpones the vesting of any interest or right whatever in the heirs of either spouse. Such, as we understand, is not the law."

The statute alluded to is section 1617, O. S. 1931. The portion of the statute relied upon is the latter portion of the second subdivision of the section reading as follows:

"* * * Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the

whole estate shall go to the survivor, at whose death if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation."

The defendant, in assuming the position thus taken, has overlooked the controlling force of Hicks v. Jeffress, 178 Okla. 109, 61 P. 2d 1079, wherein we said:

"The proviso contained in section 1617, supra, relied upon by plaintiff herein, does not constitute a rule of property in this state, but is purely a rule of descent and distribution. *No one acquires a vested right as heir to the property of a living person,* and at death the law of the situs governs the devolution of real estate. Goff v. Goff, 104 Okla. 257, 231 P. 204." (Emphasis ours.)

If any doubt upon the point remained subsequent to that decision, it was removed by In re Frary's Estate, 186 Okla. 126, 96 P. 2d 526, wherein we stated:

"It is well settled that the proviso in section 1617, supra, does not constitute a rule of property in this state, that is, it does not establish what is known as community property or any other rule of property for the reason that *no one acquires vested right as heir to the property of a living person, but is purely a rule of descent and distribution.*" (Emphasis ours.)

Upon consideration of the foregoing authorities, we conclude, and hold, that the nature of the interest attempted to be conveyed by Daniel Foley during the lifetime of his brother's widow was an expectancy as distinguished from a vested right.

The question then presented is whether such an expectancy is assignable. Neither of the parties asserts that any statute of this state has any bearing on the question and both resort to the principles of the common law as enunciated by text-writers and the authorities from this and other states.

Such assignments were, at common law, regarded as lacking a lawful subject matter and contrary to public policy.

It was therefore the general rule that (as stated in 6 C. J. S. 1057):

"An assignment by a prospective heir or devisee of his expectancy of acquiring an estate by descent or will is void at law."

See, also, 5 C. J. 858.

However, under proper circumstances, such assignments are enforced by courts of equity. 6 C. J. S. 1058. Generally such enforcement is available only where the assignment is made in good faith and upon an adequate consideration, and sometimes the consent of the ancestor is deemed essential. Thus, it is said in 4 Am. Jur. at page 269:

"Courts of equity have generally upheld assignments of expectancies by prospective heirs; by the great weight of authority, such an assignment may, upon the death of the ancestor, be enforced in equity, provided it has been fairly obtained and is based on a sufficient consideration. * * *"

And dealing specifically with the subject of consideration, it is stated at page 271 of the same volume and work:

"It may be laid down as a general rule that a court of equity will not enforce an assignment of an expectancy unless fairly made for a sufficient or an adequate consideration. * * *"

This court has approved the enforcement of such an assignment when based upon adequate and sufficient consideration. Kaylor et al. v. Kaylor, 172 Okla. 535, 45 P. 2d 743. We therefore conclude that, in the absence of an adequate consideration, the assignment herein presented was not enforceable.

On the question whether there was a consideration for the assignment, the evidence is not entirely satisfactory. However, on this point the defendant testified as follows:

"Q. You say D. D. Foley spoke to you about an assignment on several different occasions, but there was nothing much talked over about it? A. Nothing, no. Q. Did he ever tell you he was going to make an assignment of his interest

in the William T. Foley Estate? A. Yes, he said he was going to turn it over to me. Q. And you said you weren't interested? A. Well, I didn't talk a lot about it. I said it was all right. Q. You didn't question him about it, and put your approval on it at that time? A. No. Q. Weren't you interested in getting some money out of the estate if you could? A. Yes, if he would give it to me. Q. If he would give it to you? A. Well, if he wanted to give it he had a sound mind and judgment, and he thought I was entitled to it, why well and good."

It thus appears that the transaction was, in its essential characteristics, a gift.

There is testimony in the record that D. D. Foley and William T. Foley were indebted to the defendant for personal services at the time the assignment was executed; however, it does not appear that such indebtedness was released or relinquished or promised to be released by reason of the execution and delivery of the assignment.

On the contrary, the defendant, subsequent to the assignment, instituted an action to obtain judgment for the amount of the indebtedness against the estate of William T. Foley, thus indicating she regarded the indebtedness as still in existence. There is also evidence in the record of other previous transfers of property from Daniel D. Foley to the defendant. Incidentally, it appears that the defendant is a sister of the wife of T. J. Foley, a brother of D. D. Foley.

Regardless of the incidental proof in connection with this matter, the testimony of the defendant herself strongly supports the view that there was no consideration for the assignment here involved. This was evidently the view of the trial court. It is supported by the evidence and not against the clear weight thereof.

There is some discussion in the briefs as to where the burden of proof rests to establish consideration or the absence thereof and what presumption exists, in the absence of satisfactory proof on the issue. However, since the proof is, as we have determined, sufficient, a discussion of this controverted legal point is unwarranted.

Since there was no consideration, it follows that the assignment was void and the trial court was correct in so holding.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN and GIBSON, JJ., concur.