**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 23 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

OKLAHOMA NATURAL GAS, sued as Oklahoma Natural Gas Company, a division of Oneok, Inc., an Oklahoma corporation,

      Plaintiff - Appellee,

v.

APACHE CORPORATION, a Delaware corporation,

      Defendant - Third-Party-Plaintiff - Appellant,

v.

KAISER-FRANCIS OIL COMPANY, a Delaware corporation; GEORGE B. KAISER, an individual,

      Third-Party-Defendants - Appellants.

No. 04-5064 and 04-5065
(D.C. No. CV-01-95-H (C))
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, Circuit Judge, **MCWILLIAMS**, Senior Circuit Judge, and **KELLY**, Circuit Judge.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant-Appellant Apache Corporation ("Apache") appeals from a $1.24 million judgment with interest in favor of Plaintiff-Appellee Oklahoma Natural Gas Company ("ONG"). Apache in turn obtained a judgment indemnifying it (for any amounts paid to ONG because of the judgment) against Third-Party-Defendants and Appellants Kaiser-Francis Oil Co. ("Kaiser-Francis") and George B. Kaiser. Appellants contend that Apache did not assume the contract in question, that a subsequent settlement agreement between Kaiser-Francis and ONG extinguished any liability, and that the court erred in finding Apache liable because a third party had assumed the contract. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Background

On June 2, 1980, Kaiser-Francis and ONG entered a "take-or-pay" gas purchase contract ("the 1980 contract") with a term of twenty years involving the Giles Well, owned by Kaiser-Francis. I Aplee. Supp. App. at 1-37. The "take-or-pay" clause obligated ONG to either purchase a specified volume of gas each year or pay for such gas if it was not taken. In 1981, after ONG failed to purchase the specified volume, it made a deficiency payment to Kaiser-Francis of approximately $2 million. ONG had two means of recovering its deficiency

payment.  First, ONG could take gas from future production in excess of the amount it was obligated to purchase.  Id. at 11.  Second, ONG could seek repayment at the end of the twenty year contract.  Id. at 12.  During the term of the contract, ONG recouped approximately $766,000 of its deficiency payment from production, leaving approximately $1.24 million due and owing at the end of the term.

On July 1, 1983, Kaiser-Francis assigned its rights and obligations in the Giles Well and the 1980 contract to Apache.  II App. at 420-61.  Apache informed ONG of this assignment in a Letter in Lieu of Transfer and Division Orders ("Letter in Lieu"), in which Apache agreed to "assume and be bound by all of the . . . purchase and sale agreements heretofore executed by Kaiser-Francis . . . with the same force and effect as though Apache had executed such original . . . purchase and sale agreements."  Id. at 462.  Further, as part of the contract, Apache agreed to take the assignment encumbered by a potential liability to repay any outstanding balance associated with ONG's 1981 deficiency payment, Id. at 425, and Kaiser-Francis agreed to indemnify Apache if ONG recouped gas or demanded payment.  Id. at 436.  An exhibit to the agreement noted that the Giles Well was subject to an estimated unrecovered take or pay balance of approximately $2 million.  Id. at 445.

In 1988, Kaiser-Francis and ONG negotiated a settlement agreement ("the

1988 settlement agreement"), in which the parties agreed to terminate all existing contracts. Id. at 471-95. Specifically, Kaiser-Francis agreed to release claims against ONG made in three specific pending actions, Id. at 471-72, and ONG and Kaiser-Francis agreed to terminate all outstanding gas purchase contracts to which ONG and Kaiser-Francis (or any of its affiliates) were then parties. Id. at 473. In Exhibit B of that agreement, the parties explicitly listed the disputes that the settlement agreement resolved, specifically referencing the Giles Well and Kaiser-Francis's sale of its interest in that well in 1983. Id. at 481. The settlement agreement also included a covenant not to sue, which stated that the parties "will not institute any action or suit at law or in equity against each other, nor institute, prosecute or in any way voluntarily aid in the institution or prosecution of any claims, demands, actions, or causes of action." Id. at 474.

On December 30, 1994, Apache and ONG entered a settlement agreement that terminated all of their then-outstanding gas purchase contracts, except for the 1980 Contract. At this time, Apache had already assigned the Giles Well and the Giles Well contract to an unrelated third party.

## Discussion

We review the district court's legal conclusions and construction and interpretation of an unambiguous agreement de novo. In re Villa W. Assocs., 146

- 4 -

F.3d 798, 802 (10th Cir. 1998). However, when the district court resorts to extrinsic evidence to ascertain the meaning of contractual terms, the interpretation is factual and cannot be set aside unless clearly erroneous. Carpenters & Millwrights Health Benefit Trust Fund v. Gardineer Dry Walling Co., 573 F.2d 1172, 1173 (10th Cir. 1978). That is, the district court's factual findings should not be set aside unless the court is "left with a definite and firm conviction that a mistake has been made." Raydon Exploration, Inc. v. Ladd, 902 F.2d 1496, 1499 (10th Cir. 1990).

## I. Apache's Assumption of the Contract

The district court found that the 1983 contract between Kaiser-Francis and Apache assigned Kaiser-Francis's rights and obligations in the Giles Well and the 1980 contract to Apache. Then, considering Apache's Letter in Lieu to ONG, which stated that Apache agreed to "assume and be bound by all of the . . . purchase and sale agreements heretofore executed by Kaiser-Francis . . . with the same force and effect as though Apache had executed such original . . . purchase and sale agreements," the court found that Apache expressly assumed the 1980 contract. I App. at 358-59.

According to Apache, this case essentially hinges on whether the liability to repay the deficiency payment accrued before or after the 1983 contract. Apache contends that Kaiser-Francis's obligation to repay accrued in 1981 when ONG's

deficiency payment was made. Apache relies on a provision in the 1980 contract that Kaiser-Francis would "be relieved and discharged of all obligations thereafter accruing under this agreement, to the extent of the interest so assigned, transferred, or disposed of." II App. at 417. According to Apache, as an assignee, in 1983 it could only be liable for those obligations "thereafter accruing" rather than previously accrued obligations like the repayment obligation. Apache also argues that Kaiser-Francis could not have assigned this previously accrued liability, and the obligation to repay was extinguished by the 1988 settlement agreement between Kaiser-Francis and ONG.

The matter is not so simple. When ONG made the deficiency payment, a liability for the repayment obligation accrued, notwithstanding that it could be satisfied through in kind recoupment of gas during the life of the contract or at the end of the contract's term through monetary reimbursement–it was a liability. But we do not read the provision concerning assignment as in any way altering the express contractual provision, assumed by Apache, that it would repay the unrecovered deficiency payments to ONG at the end of the term. Id. at 395. Similarly, Apache's argument on appeal that the district court's supposed distinction between in rem and in personam liability was erroneous, analogizing the liability to repay the deficiency payment to a mortgage, must fail. Given the express contract provision stating that Apache would repay any unrecovered

deficiency payment, we decline to resort to Apache's common law analogy. We do not necessarily agree with the district court's observation that Kaiser-Francis had no liability for the deficiency payment upon assignment because it had not accrued. I App. at 373. However, we need not reach that issue because ONG did not seek to hold Kaiser-Francis liable as the assignor, having released it.

Apache also argues that the 1983 sale contract stipulated that Kaiser-Francis would remain liable for all obligations arising before the sale and Apache would be liable for anything arising later, thus leaving Kaiser-Francis liable under the 1980 contract, rather than Apache. However, a closer look at the contract forecloses this argument. The 1983 sale contract states that Apache "shall assume and agree to perform, discharge and fulfill all obligations which under generally accepted accounting principles are (a) attributable to the Assets (b) incurred in the ordinary course of operation and (c) which arise out of events occurring subsequent to [June 10, 1983]." II App. at 424. Without question, the repayment obligation was attributable to an assigned asset and incurred in the ordinary course of operation. However, that obligation arises both out of events occurring before June 10, 1983, as well as events after. In particular, having assumed the express contractual duty to settle the liability with money at the end of the contract term (subject to gas in recoupment during the term), we have no hesitation in concluding that element (c) is satisfied.

Moreover, the evidence in the record supports the district court's finding that Apache was liable for the deficiency payment under the 1980 contract. Between July 1983 and December 1990, ONG took "make-up" gas from the Giles Well, which was owned and operated by Apache during this time. Thus, Apache recognized its obligation to ONG under the 1980 contract both before and after the 1988 settlement agreement between Kaiser-Francis and ONG.

Finally, Apache's argument that the liability to repay could not have been assigned or assumed must fail. Fundamental contract law provides that an assignor may delegate a duty to a third party, unless contractually prohibited or the performance to be rendered requires special skills or ability. <u>See</u> Okla. Stat. tit. 12A, § 2-210(1); <u>Beattie v. State ex rel. Grand River Dam Auth.</u>, 41 P.3d 377, 381 (Okla. 2002); John Edward Murray, Jr., <u>Murray on Contracts</u> § 140(B) (4th ed. 2001). Nothing in the 1980 contract prohibits delegation and no special skills or abilities are required to perform the contact. Moreover, the 1983 contract between Kaiser-Francis and Apache explicitly assigns Kaiser-Francis's rights and obligations to Apache, and Apache's Letter in Lieu makes it clear that Apache agreed to assume and be bound by the 1980 contract as if it were a party. Apache and Kaiser-Francis must have recognized this, having agreed in 1983 that Kaiser-Francis would indemnify Apache for "Take or Pay Adjustments" related to the outstanding balance of ONG's 1981 deficiency payment. Thus, the language is

sufficient to show the intent to transfer the obligation to repay the deficiency payment. Beattie, 41 P.3d at 380-81; Lone Mountain Prod. Co. v. Natural Gas Pipeline Co. of Am., 984 F.2d 1551, 1556 (10th Cir. 1992). Apache's Letter in Lieu was sufficient to provide actual knowledge of the assignment to ONG so as to make the assignment binding on all parties. Kaylor v. Kaylor, 45 P.2d 743, 745 (Okla. 1935).

II. Effect of the 1988 Settlement Agreement

A. Termination of Existing Contracts - At trial, the district court found that because Apache had assumed the 1980 contract, the 1988 settlement agreement between Kaiser-Francis and ONG had no effect on the 1980 contract. Kaiser-Francis first argues that the district court erred in finding the 1988 settlement agreement ambiguous. Kaiser-Francis also argues that the court misconstrued the release clause in the 1988 settlement agreement, which states that "ONG and Producer [Kaiser-Francis] desire to fully, finally and completely resolve, compromise and settle any and all disputes, controversies, causes of action (in law or in equity), claims, debts and damages, known or unknown, accrued or unaccrued . . . or which relate to the Gas Purchase Contracts." II App. at 472. Thus, argues Kaiser-Francis, the settlement agreement was intended to be a global or walkaway agreement to resolve all outstanding contractual obligations.

Although Kaiser-Francis and Apache argue at some length that the district

court erred in finding the 1988 settlement agreement ambiguous, we need not reach the issue. Assuming, without deciding, that Apache is correct that the settlement agreement is unambiguous, its plain language militates that we affirm the district court. The broad language of the agreement undoubtedly shows a clear intent of the parties to resolve all claims, disputes, and causes of action between the parties. Nevertheless, the parties to that settlement agreement were Kaiser-Francis and ONG, not Apache and ONG. As previously discussed, liability for the 1980 contract and Giles Well was assigned to and assumed by Apache in 1983. Exhibit B of the 1988 settlement agreement, which explicitly listed the Giles Well as "previously transferred," supports the fact that Kaiser-Francis had transferred its obligations concerning the Giles Well to Apache. Accordingly, the 1988 settlement agreement between Kaiser-Francis and ONG did nothing to alter Apache's liability, and Apache's argument that the 1988 settlement agreement precludes the instant action is without merit.

B. <u>Covenant Not to Sue</u> - The district court found that the language of the 1988 settlement agreement's non-suit provision showed an intent of the parties not to sue or aid third parties in suing each other, but was not so broad as to reflect a general intention to release indirect liability for claims brought by either party against a third party. On appeal, Kaiser-Francis and Apache argue that ONG knew that Kaiser-Francis was required to reimburse Apache, and the instant

case is a "flank attack" to get money from Kaiser-Francis through Apache.

The covenant not to sue prohibited each party from suing the other directly, assisting claims by third parties indirectly, or aiding third parties in claims related to the gas purchase contracts. However, nothing in the agreement could be read so broadly as to bar either ONG or Kaiser-Francis from bringing suit against third parties, even when ONG or Kaiser-Francis may know that the other must indemnify any loss to the third party.

## III. Effect of Apache's Prior Assignment

Although not discussed in the district court's order, Apache argues that the court erred in holding it liable because Apache had conveyed the Giles Well to a third party. Apache points to the district court's finding that liability to reimburse the remaining deficiency did not accrue until the end of the twenty-year contract term. Thus, Apache argues that according to the court's own reasoning, Apache's assignee, not Apache itself, must be liable.

However, our review of the record reveals that Apache failed to properly raise this issue and denied the responsibility of any third party other than Kaiser-Francis at trial. For example, when asked in an interrogatory to explain its affirmative defense that ONG sued the wrong party, Apache replied that ONG should have sued Kaiser-Francis. II Aplee. Supp. App. at 9. When asked to explain the affirmative defense that ONG failed to join an indispensable party,

- 11 -

Apache responded that the issue was moot because Kaiser-Francis had been joined. Id. at 10. Finally, when asked about Apache's affirmative defense that the suit is barred by payment, Apache responded that any money that may be owed to ONG is owed by Kaiser-Francis and not Apache.

Apache also brought this issue to the court's attention several times. In its answer, Apache stated that it "assigned the legal title to the beneficial owner Fund effective June 28, 1989." I App. at 25. Moreover, in its proposed findings and conclusions and responses to ONG's proposed findings and conclusions, Apache mentioned that it had previously transferred any interest in the Giles Well. See id. at 200, 217, 257-58, 267, 268, 272. Finally, Apache briefly argued during a hearing on post-trial findings that a third party, not Apache, was party to the 1980 contract when its term was completed. Id. at 325-35. However, the issue of subsequent assignment by Apache was not an issue included in the district court's pretrial order, id. at 88-102, and Apache failed to request that the pretrial order be amended to include this defense. Moreover, when Apache presented evidence of the chain of title to the Giles Well at trial, ONG objected because the defense that an unnamed third party was liable was not raised in the pretrial order. V App. at 615. The court responded by stating that it did not think that defense was being asserted, and counsel for Apache agreed. Id. at 616.

The claim that the plaintiff has sued the wrong party is treated as an

affirmative defense because it constitutes an avoidance or a bar. Fed. R. Civ. P. 8(c). A defense not raised in a pretrial order may not be asserted at trial. See Fed. R. Civ. P. 16(e) (stating that the pretrial order controls the course of the action unless modified by a subsequent order); see also Expertise, Inc. v. Aetna Finance, Co., 810 F.2d 968, 973 (10th Cir. 1987) (finding that a defense was not waived because it was included in the pre-trial order). Thus, Apache's only presentation to the district court that some third party was liable under the contract took place as a general denial in the answer, in Apache's proposed findings and conclusions, and in Apache's response to the proposed findings submitted by ONG. The court of appeals may not try issues for the district court or make findings on theories that should have been presented to the district court in an adversarial fashion. For whatever reason, Apache raised this issue almost as an afterthought, and this is insufficient to preserve it for appeal. Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721 (10th Cir. 1993).

AFFIRMED. ONG's motion to include a Supplemental Appendix is hereby granted.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge


- 13 -