2008 OK CIV APP 49

Neomia WEST, Appellant,

v.

L.W. JUSTICE and Beulah Justice, by and through their attorney-in-fact, Joy JUSTICE, Plaintiffs/Appellees,

and

Larry C. Harper; Leasecomm Corporation; Board of County Commissioners, Delaware County, Oklahoma; and Mary Jane Law, County Treasurer, Delaware County, Oklahoma, Defendants.

No. 101,863.

Court of Civil Appeals of Oklahoma, Division No. 2.

May 4, 2007.

Jason B. Aamodt, Aamodt & Wright, Tulsa, OK, for Appellant.

William C. Reppart, Jr., Jay, OK, for Plaintiffs/Appellees.

JOHN F. FISCHER, Judge.

¶1 Neomia West appeals an order of the District Court of Delaware County confirming a sheriff's sale of land to L.W. and Beulah Justice. Based on our review of the record on appeal and applicable law, we dismiss the appeal because West does not have standing.

## BACKGROUND FACTS

¶2 In May 1997, Larry Harper signed and delivered to Appellees L.W. and Beulah Justice a Promissory Note for the principal amount of $45,000. To secure this transaction, Harper executed a mortgage granting the Justices a first lien on land Harper owned in Grove, Oklahoma (the Property). The Justices recorded the mortgage on May 21, 1997 in the office of the County Clerk of Delaware County.

¶3 On July 21, 2004, after Harper failed to pay as required by the terms of the Promissory Note, the Justices filed a Petition for Mortgage Foreclosure. The Trial Court granted the Justices' motion for summary judgment on October 6, 2004 and ordered the Property sold and the proceeds applied to: (1) unpaid ad valorem taxes, penalties and interest due to Delaware County; (2) attorney fees and costs of litigation; (3) the Justices' judgment award against Harper; and (4) the Court Clerk for further distribution, should any residue remain.

¶4 On October 20, 2004, Harper filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the United States Bankruptcy Code and a trustee was appointed to administer the case. 11 U.S.C. §§ 301, 701.[1] On November 18, 2004, the Bankruptcy Court for the Northern District of Oklahoma granted the Justices relief from the automatic stay entered pursuant to 11 U.S.C. § 362, and allowed them to proceed with their state court foreclosure action.

¶5 Consequently, on November 19, 2004, the Trial Court issued an Order for Appraisal to have the land valued by three independent appraisers appointed by the sheriff pursuant to Oklahoma law. The Oath of Appraisers, valuing the property at $74,000, was filed on November 29, 2004. The Notice of Sheriff's Sale set January 11, 2005 as the date of sale. At the sale, the Justices' $54,175 bid was the successful and only bid for the property.[2] Confirmation of the sale was set for February 1, 2005.

¶6 West's interest in this property resulted from the settlement of a law suit West had filed to recover for personal injuries she suffered after being bitten by Harper's dog. The Settlement Agreement was signed on March 24, 2004. Payment of the settlement amount was secured by a mortgage, which covered the same property Harper had mortgaged to the Justices but which was junior to the Justices' mortgage. West filed her mortgage with the Delaware County Clerk in April 2004. This incorrect filing, however, was not effective to give notice of her secured interest in the Property to third parties. 16 O.S.2001 § 15; 19 O.S.2001 §§ 284–300. Harper made the initial payment required by the Settlement Agreement but defaulted on the remaining payments. Pursuant to the terms of the settlement, Harper's default permitted West to pursue collection of the balance of the settlement from her interest in the Property subject to the rights of the Justices.

---

1. All discussion of federal bankruptcy law in this opinion reference Chapter 7 proceedings unless otherwise noted.

2. West acknowledges that she received notice of the sale but was unable to locate the sheriff at the appointed time. She also testified that had she attended the sale, she would not have bid because she was financially unable to purchase the property. The $54,175 bid by the Justices exceeded by several thousand dollars the statutory two-thirds minimum of the appraisers' $74,000 value required at a sheriff's sale pursuant to 12 O.S.2001 § 762.

¶7 In the Trial Court, West objected to the sale of the property and to confirmation of the sheriff's sale asserting two arguments: (1) the judgment she obtained from Harper was not dischargeable in bankruptcy because the attack was vicious and, therefore, Harper's conduct was willful; (2) the property was grossly under-valued by the independent appraisers. At the conclusion of the confirmation hearing, the Trial Court raised the issue of West's standing because of the probability that any excess funds generated from the sale would be paid to Harper's bankruptcy trustee. However, the Trial Court denied West's objections on the merits and confirmed the sale. West appeals.

## STANDARD OF REVIEW

¶8 We review a trial court's order confirming a sheriff's sale for an abuse of discretion. *Fleet Real Estate Funding Corp. v. Frampton,* 1991 OK CIV APP 32, ¶8, 812 P.2d 416, 418. Where a sale is conducted pursuant to statute, a trial court will not inquire into the sufficiency of the sale price unless the price is grossly inadequate. *Rodolf v. First Nat'l Bank & Trust Co. of Tulsa,* 1938 OK 245, 182 Okla. 426, 78 P.2d 296. In her appeal, West does not challenge the legal sufficiency of the sale process. Her sole focus is on the adequacy of the sale price and the evidentiary support for the Trial Court's determination that the sale price was not grossly inadequate. We must first, however, determine her standing in this case.

¶9 This Court will not issue advisory opinions. *In re Fun Country Dev. Auth.,* 1977 OK 138, 566 P.2d 1167. "To be a proper subject for adjudication, a controversy must be 'justiciable,' that is, appropriate for judicial inquiry." *In re Application of State ex rel. Dep't of Transp.,* 1982 OK 36, ¶6, 646 P.2d 605, 608–09. Absent standing, a party's claim is not justiciable, and courts will not inquire into the merits of a claim. *Id.* at ¶6, 646 P.2d at 609; *Toxic Waste Impact Group, Inc. v. Leavitt,* 1994 OK 148, ¶9, 890 P.2d 906, 911; *House of Realty, Inc. v. City of Midwest City,* 2004 OK 97, ¶12, 109 P.3d 314, 318.

¶10 At any stage of the proceedings, the issue of standing may be raised by any party or by the Court *sua sponte. Stites v. DUIT Constr. Co., Inc.,* 1995 OK 69, ¶8, 903 P.2d 293, 297; *Hendrick v. Walters,* 1993 OK 162, ¶4, 865 P.2d 1232, 1236. Where contested, "the party invoking a court's jurisdiction has the burden of establishing his or her standing ... to pursue the action in court." *Toxic Waste,* 1994 OK 148 at ¶8, 890 P.2d at 910. "The appropriate inquiry on a standing question is whether the plaintiff has in fact suffered injury to a legally protected interest as contemplated by statutory or constitutional provisions." *Id.* at ¶9, 890 P.2d at 911; *Indep. Sch. Dist. No. 9 v. Glass,* 1982 OK 2, ¶10, 639 P.2d 1233, 1237.

## DISCUSSION

¶11 As previously noted, the Trial Court was concerned with West's standing but proceeded to a determination of the merits of the case preserving for appellate review all dispositive issues. The Justices have now raised the standing issue in this appeal. Because neither party had briefed the issue in the Trial Court, we called for supplemental submissions regarding this issue, which the parties have now provided.

¶12 The facts relevant to West's standing are not in dispute. West obtained her settlement and mortgage prior to the time they could have been set aside as a preferential transfer in Harper's bankruptcy. 11 U.S.C. § 547(b). Because of her secured interest in the Property, Harper listed West as a secured creditor on his bankruptcy schedules. Although her mortgage was unrecorded at the time Harper's petition was filed, that did not invalidate her mortgage. *Kaylor v. Kaylor,* 1935 OK 530, 45 P.2d 743. Consequently, West may have been entitled to share in any distributions to creditors from Harper's bankruptcy estate, including any potential excess proceeds from the sale of the Property. 11 U.S.C. §§ 501, 506, 724 and 726.

¶13 West's priority to those distributions, however, by virtue of her secured but unrecorded lien on the Property, is not for this Court to resolve. The bankruptcy court has exclusive jurisdiction to determine the equitable distribution of assets of the bankruptcy

estate. *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004). The issue before this Court is whether West had standing to challenge confirmation of the state court foreclosure sale.

¶ 14 The fact that West was a creditor in the Harper Bankruptcy does not resolve the issue of her standing in this case. Although a secured creditor at the time Harper filed his bankruptcy petition, West sought to improve her position on November 5, 2004 by recording her mortgage with the Delaware County Clerk for the first time, after his petition was filed. To do so, without violating the automatic stay issued by the bankruptcy court when Harper's petition was filed, West needed the approval of the bankruptcy court. 11 U.S.C. § 362(d). And, in fact, West sought that approval on November 12, 2004, when she filed her Motion for Relief from Stay. Although the court granted the Justices' motion to lift the stay on November 18, 2004, it did not grant West's motion. The Trustee filed an objection to West's motion and the matter was set for hearing. In his objection, the Trustee argued that West's November 5, 2004 recording of her mortgage was void and that cause did not exist pursuant to 11 U.S.C. § 362(d) to grant West relief from the stay.[3] West withdrew her motion on January 4, 2005. West's withdrawal of her motion precluded the bankruptcy court's consideration of the issue presented in *In re McPherson*, 225 B.R. 203 (Bankr.D.Idaho 1998), in which a second mortgagee was granted relief from an automatic stay after demonstrating that the first mortgagee was substantially oversecured.

¶ 15 Harper was discharged by the bankruptcy court on January 26, 2005. West did not object to his discharge or request an exception to his discharge pursuant to 11 U.S.C. § 523(c)(1). This discharge precluded any effort by West to collect the unsatisfied portion of the settlement from Harper on her theory that the debt was not dischargeable because his conduct in permitting the particularly vicious dog attack was willful and malicious. 11 U.S.C. §§ 524, 727. Nonetheless, Harper's discharge from personal liability for West's debt did not, in and of itself, terminate West's secured interest in the Property. *In re Lowther*, 52 Fed.Appx. 476 (10th Cir. 2002) (holding, based on United States Supreme Court precedent, that while discharge of a debtor extinguishes the debtor's personal liability for a debt, it does not void the liens of creditors securing that debt even if the lien is not perfected in the manner required by law at the time the bankruptcy petition is filed).[4] It is not apparent from this record whether Harper or the Trustee sought to avoid West's lien pursuant to 11 U.S.C. § 544. Absent such action, and the interest of the Justices, West's mortgage lien would have survived Harper's discharge and the closing of his bankruptcy case, *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), and West would have been free to pursue foreclosure of her mortgage in the Trial Court. *Chandler Bank of Lyons v. Ray*, 804 F.2d 577 (10th Cir.1986).

¶ 16 The Justices in this appeal assert that because any excess proceeds from the sale would have to be paid to the bankruptcy Trustee, only the Trustee had standing to participate in the sheriff's sale and confirmation proceedings. While we agree that the Trustee would have standing to appear in the state court proceedings, that does not automatically exclude West from participating in the same proceedings.

¶ 17 West has an interest in maximizing the sale price of the Property for two rea-

---

3. In general, a party who has a legal right that can be enforced or who is entitled to bring suit is a party in interest permitted to seek relief from the automatic stay pursuant to 11 U.S.C. § 362. *In re Comcoach Corp.*, 698 F.2d 571 (2nd Cir. 1983). The Trustee did not challenge West's motion on this basis. Further, the Trustee did not argue that West was an unsecured creditor generally not entitled to relief from the automatic stay. *In re Dairy Mart Convenience Stores*, 351 F.3d 86 (2nd Cir.2003). The Trustee's objection was based on lack of "cause" in light of the court's determination to lift the stay allowing the Justices to proceed with their pending foreclosure proceeding.

4. *In re Lowther* was not selected for publication but may be cited pursuant to Tenth Circuit Rule 36.3 under certain circumstances that we find applicable here.

sons. First, if she can establish any priority resulting from her secured but unrecorded interest in the Property she may be entitled to any excess proceeds resulting from the sale. Second, the more money generated by the sale of the Property the more likely it is that there might be funds available to satisfy her claim as a creditor of the estate regardless of her priority. Likewise, the Trustee is charged with the duty of not only marshalling the assets of the estate, 11 U.S.C. § 704, but also maximizing the value of those assets for the satisfaction of the claims of creditors. *Mele v. First Colony Life Ins., Co.,* 127 B.R. 82 (Bankr.D.D.C.1991).

¶ 18 The interests of a trustee and a creditor, therefore, may be aligned but they are, nonetheless, independent, and West's right to pursue foreclosure of her second mortgage on the Property is the kind of right that gives rise to a justiciable claim. *Toxic Waste,* 1994 OK 148 at ¶ 9, 890 P.2d at 911; *McPherson,* 225 B.R. at 204–05.

¶ 19 While West's independent interest in maximizing the sale price of the Property or pursuing foreclosure of her secured but unrecorded lien might, under other circumstances, confer standing, Harper's bankruptcy proceeding requires a different result. Once Harper filed his bankruptcy petition, all of his assets, including the Property, became property of the estate. 11 U.S.C. § 541. It was the Trustee's duty to collect these assets and convert them to cash for distribution by the court. 11 U.S.C. § 704(1). As West concedes, the bankruptcy court did not abandon the property when it granted the Justices' motion for relief from the stay. *Catalano v. C.I.R.,* 279 F.3d 682 (9th Cir.2002). The Trustee was entitled to any "proceeds in excess of the [Justices'] interest." *In re Nebel,* 175 B.R. 306, 312 (Bankr.D.Neb.1994). Further, counsel for the Trustee entered an appearance in this case on January 18, 2005, and the Trial Court's order provided for distribution of the sale proceeds, after the pay-

ment of taxes, attorney fees, costs and the Justices' interest, as further ordered by the Court. Section 724(b) of the Bankruptcy Code would require the Trustee to distribute, in the priority specified, any proceeds from the sale of the Property after satisfaction of the Justices' claim.

¶ 20 While we agree with the Trustee that West's November 5, 2004 recording of her mortgage was void,[5] that does not resolve this standing issue. *See e.g., In re Warren,* 217 B.R. 538 (Bankr.S.D.Tex.1997) (recording a judgment lien after bankruptcy petition was filed did not perfect creditor's security interest, consequently creditor was considered as an unsecured creditor). West had a justiciable interest in the Property by virtue of her second mortgage. However, once the Property became part of Harper's bankruptcy estate, the automatic stay issued pursuant to 11 U.S.C. § 362 enjoined West from pursuing that interest without the approval of the bankruptcy court. West's mortgage lien might have survived Harper's discharge and the closing of his bankruptcy, but while that bankruptcy was pending West needed permission from the bankruptcy court to pursue her interest. West did not obtain approval from the bankruptcy court to participate in the state court foreclosure proceeding. Consequently, West did not have standing to appear in the state court foreclosure proceeding and she does not have standing to prosecute this appeal.

¶ 21 **APPEAL DISMISSED.**

WISEMAN, P.J., and GOODMAN, J., concur.

---

**5.** *In re Funket,* 27 B.R. 640 (Bankr.M.D.Pa.1982) (recording a mortgage after the filing of a bank- ruptcy petition was a nullity).