502

Freeda M. BREEDING, Appellant,

v.

NJH ENTERPRISES, LLC., and Marvin O. Breeding and Sharon Breeding, husband and wife, Appellees.

No. 85155.

Supreme Court of Oklahoma.

May 13, 1997.

Steven S. Mansell, Oklahoma City, for Appellant.

Michael A. Bickford, Fuller, Tubb and Pomeroy, Oklahoma City, for Marvin O. Breeding and Sharon Breeding.

Charles C. Green and Stacy Cole McDaniel, McKinney, Stringer and Webster, P.C. Oklahoma City, for NJH.

WATT, Justice.

## FACTS

¶1 Freeda M. Breeding and Marvin O. Breeding were divorced in Oklahoma County in 1984. The trial court in the divorce action awarded Mr. Breeding the parties' Oklahoma City homestead, in which the parties agreed they had equity of $323,000.00. Mrs. Breeding appealed, and on May 6, 1986 this Court modified the trial court's property award by granting Mrs. Breeding an additional $100,-000.00 cash in lieu of property, secured by a lien on the Breedings' former homestead.

¶2 Mr. Breeding executed a $500,000.00 mortgage to Lakeshore Bank on the former homestead on July 31, 1985, while the divorce case appeal was pending. The Lakeshore Bank mortgage covered not only the former homestead, but an additional twenty-four acres in Oklahoma County. Mrs. Breeding did not sign the mortgage, although according to the records of the Oklahoma County Clerk title to the homestead was still in Mr. and Mrs. Breeding as joint tenants. Mrs. Breeding had not filed a *lis pendens* notice in accordance with the then effective statute, 12 O.S.1981 § 180.1. The applicable portion of § 180.1 stated:

> Upon the filing of a petition, the action is pending so as to charge third persons with notice of its pendency. While an action is pending, no third person shall acquire an interest in the subject matter of the suit as against the plaintiff's title; except that:

> . . . . .

> No action pending in either state or federal court shall constitute notice with respect to any real property until a notice of pendency of the action, identifying the case and the court in which it is pending and giving the legal description of the land affected by the action, is filed of record in the *office of the county clerk where the land is situated.*

¶3 The substance of the foregoing language remains in the current version of the *lis pendens* statute, 12 O.S.1991 § 2004.2.

¶4 On April 15, 1986, while the divorce case appeal was pending, Mr. Breeding obtained a $600,000.00 line of credit from Capitol National Bank. Under the terms of the Credit Agreement Mr. Breeding made with Capitol National, Mr. Breeding agreed to give Capitol National security agreements and mortgages on all his property, including stock in the Oklahoma City Golf & Country Club, a Beechcraft Baron aircraft, and the Breedings' former homestead. Lakeshore Bank assigned its mortgage to Capitol National Bank. The Credit Agreement recited that the appeal of the Breedings' divorce case was pending in this Court.

¶5 Capitol National Bank assigned the Lakeshore Bank mortgage to Appellee NJH's predecessor in interest, Nona Jean Hulsey, on December 11, 1987. Mrs. Breeding filed an affidavit of judgment in the Oklahoma County Clerk's office on August 27, 1990.

## PROCEDURAL HISTORY

¶6 Mr. Breeding defaulted on his obligation to pay Mrs. Breeding the additional $100,000.00 awarded by this Court in the divorce case, and Mrs. Breeding brought the suit from which this appeal arises on August 2, 1991. In her suit Mrs. Breeding sought to have her lien on the former homestead declared superior to NJH's lien, and to foreclose her lien.

¶ 7 The trial court held that the lien of the Lakeshore Bank mortgage to the former homestead was senior to Mrs. Breeding's lien. The Court of Civil Appeals affirmed the trial court on the ground that actual knowledge of pending litigation does not waive the filing requirements of the *lis pendens* statute.

## ISSUE

¶ 8 Is actual knowledge of the pendency of an action involving real property a substitute for the notice required by the *lis pendens* statute, 12 O.S.1991 § 2004.2 (formerly 12 O.S.1981 § 180.1)? We hold that where there was actual notice of the pendency of such an action the failure to file the *lis pendens* notice provided for by statute is immaterial.

## DISCUSSION

¶ 9 NJH claims that the record does not support Mrs. Breeding's claim that Lakeshore Bank was aware of the divorce decree sufficient to put it on inquiry. We disagree. Lakeshore Bank's mortgage referred to Mr. Breeding as a single man, and the former homestead as his separate property despite the fact that record title was in Mr. and Mrs. Breeding as joint tenants. Lakeshore Bank's successor in interest, Capitol National Bank, recited the fact of the pending appeal of the divorce case in its Credit Agreement with Mr. Breeding. NJH does not claim that Lakeshore Bank did not know of the pendency of the divorce case appeal. Nona Jean Hulsey, and Capitol National Bank were represented by the law firm that represents NJH here. Given these facts we have no hesitancy to hold that Lakeshore Bank was on notice to make a reasonable inquiry concerning Mrs. Breeding's claims to the property. Lakeshore Bank's successors, Capitol National Bank, Nona June Hulsey, and NJH, took the mortgage to the property subject to the further rulings of this court in the divorce case appeal. *Hart v. Pharaoh,* 359 P.2d 1074, 1078 (Okla.1961). Lakeshore Bank and its successors, therefore, took their mortgage subject to the possibility that this Court might reduce Mr. Breeding's interest in the mortgaged property.

¶ 10 We turn now to the first impression question, whether Lakeshore Bank's actual knowledge of the pendency of the divorce case appeal made immaterial Mrs. Breeding's failure to comply with the *lis pendens* statute's filing provisions. In *White v. Wensauer,* 702 P.2d 15, 49 A.L.R.4th 233 (Okla.1985) we noted that *lis pendens* is an equitable doctrine, and the *lis pendens* statute a codification of that doctrine. NJH would have us hold that the *lis pendens* statute prohibits application of the *lis pendens* doctrine even against one with actual notice if the statute's filing provisions have not been observed. This we decline to do.

¶ 11 The teaching of *White* is that "Because the doctrine of *lis pendens* is derived from the notions of common-law and equity jurisprudence, rather than from statute, it is subject to equitable principles." 702 P.2d at 18. It would be inequitable to allow NJH, who, along with its predecessors in title, had actual knowledge of the divorce case appeal, to avoid *lis pendens* here. In *White* we held that *lis pendens* would not be applied when applying the doctrine would be "harsh or arbitrary." 702 P.2d at 18. Today we hold that *lis pendens* will be applied here because failure to apply the doctrine in the circumstances of this appeal would be inequitable. It would make no sense to use *White* as the basis for refusing to apply *lis pendens* when refusing to do so would be inequitable.

¶ 12 NJH has cited no reported decision, and we have found none, in which one with actual notice of litigation that might effect property in which one claims an interest was allowed to avoid the constraints of *lis pendens.* We have found one opinion, from the Supreme Court of Alabama, reaching the result we reach here today. In *First Alabama Bank of Tuscaloosa, N.A. v. Brooker,* 418 So.2d 851 (Ala.1982), the court held that *lis pendens* applied to the mortgagee of a mortgage to the divorced couple's jointly held property given by the ex-husband alone, although no *lis pendens* notice had been given. The pending action was a divorce action in which property division was an issue. The Alabama *lis pendens* statute excepted those with actual notice from the filing require-

ments of the act, unlike the Oklahoma *lis pendens* act, which is silent on the subject. Nevertheless, we find the reasoning of the Alabama Court persuasive:

What then of actual notice, where there was no compliance with the *lis pendens* statute ...? If, therefore there was actual notice, it is immaterial whether the statutory notice was given.

418 So.2d at 853, quoting with approval *Lee v. Macon County Bank*, 233 Ala. 522, 172 So. 662 (1937). See also *Oldewurtel v. Redding*, 421 N.W.2d 722, 728 (Minn.1988) (held that had a property division order in a divorce case that affected property previously mortgaged to one with knowledge of pendency of divorce action been modified on appeal, the mortgagee would have lost its security (dicta).)

¶ 13 NJH argues that Mrs. Breeding's failure to supersede the trial court's property award prohibits her from claiming the benefits of *lis pendens*. We disagree. A supersedeas bond "stay[s] the enforcement of a judgment." 12 O.S.1993 Supp. § 990.4. A supersedeas bond merely prevent the prevailing party in litigation from seizing and selling his opponent's property to satisfy the judgment while an appeal of the judgment pends, but *Lis pendens* applies to persons not parties to the action. Its purpose is to preserve the power of the court to change the relationship of the parties as to property at issue in the case without the intervention of third party rights created during the pendency of the litigation. The supersedeas bond statute is inapplicable to rights and obligations arising under *lis pendens*.

¶ 14 The *lis pendens* statute says that its filing requirements apply to a "third person." NJH would have us interpret the term "third person" to include even those who have actual knowledge of the pending litigation. We have previously construed a statute that uses the term "third persons." Title 16 O.S.1991 § 15 provides that deeds and mortgages "shall be valid as against third persons unless acknowledged and recorded." We held in *Whitehead v. Garrett*, 199 Okla. 278, 280, 185 P.2d 686, 688 (1947), "The 'third persons' defined by § 15, supra, refer to innocent purchasers for value."

¶ 15 Lakeshore Bank was not "innocent" when it took its mortgage from Mr. Breeding as a single man, while record title to the mortgaged property was in the Breedings as joint tenants. The filing requirements of the *lis pendens* statute protect those without actual notice of the litigation from the sometimes harsh consequences of taking an interest in property during the pendency of litigation that may affect title to the property. Those with actual knowledge of litigation may not rely on a failure to give notice of that which they already know.

¶ 16 We hold that Mrs. Breeding's lien to her former homestead is senior to NJH's mortgage lien, and reverse and remand this matter to the trial court with instructions to enter judgment for Mrs. Breeding and to foreclose her lien. Mrs. Breeding has filed a motion to assess attorneys fees. The issue of attorney fees is remanded to the trial court for hearing and determination.

¶ 17 There is language in the dissent that could lead one to believe that we deferred for determination on the merits of the appeal the jurisdictional issue the dissent discusses. (dissenting opinion p. 507.) This is not so. The jurisdictional issue raised by Mr. Breeding was made in his July 27, 1995 Response to Mrs. Breeding's amended petition in error. Mrs. Breeding's amended petition in error made Mr. Breeding a party to the appeal and sought attorneys' fees and costs. Mr. Breeding's response raised nothing that this Court did not dispose of in its June 27, 1995 order. The only new jurisdictional issues raised by Mr. Breeding and NJH related to this Court's jurisdiction to dispose of attorneys' fees and costs. By our order of August 2, 1995 we deferred the determination of our jurisdiction to consider the attorneys' fee issue, and only that issue, to the decisional stage. We have resolved this issue by remanding the attorneys' fees and costs issue to the trial court for determination. Thus, we had no reason to inquire into our jurisdiction to dispose of the attorneys' fee issue. The jurisdictional issue the dissent discusses was fully, and finally, disposed of by our June 27, 1995 order. The dissent raises

nothing not stated in an unpublished dissenting opinion to our June 27, 1995 order.

CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS' OPINION VACATED, JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.

¶ 18 SUMMERS, V.C.J., and HODGES, LAVENDER and ALMA WILSON, JJ., concur.

¶ 19 HARGRAVE, J., concurs in result.

¶ 20 OPALA, J., with whom SIMMS, J., joins, dissents.

¶ 21 KAUGER, C.J., not participating.

¶ 1 OPALA, Justice, with whom SIMMS, Justice joins, dissenting.

¶ 2 The court today disposes of Freeda M. Breeding's (Breeding) petition for certiorari. Her appeal had been brought here from a nisi prius order that (1) determines her lien's rank vis-a-vis other liens against her former husband's real property and (2) denies her quest for an order requiring the marshaling of liens. That order did *not* dispose of Breeding's single claim for lien *foreclosure.* Because I view the critical decision as *less* than a complete termination of her foreclosure suit—and hence *neither* appealable as a judgment [1] *nor* entitled to advanced review under the terms of 12 O.S.Supp.1995 § 994(A) [2]—*I cannot accede* to the court's willingness to view this cause *as brought from an appealable nisi prius ruling.*

1. The terms of 12 O.S.1991 § 952(a) provide in pertinent part:

    "The Supreme Court may reverse, vacate or modify *judgments* of the district court for errors appearing on the record...." (Emphasis provided.)

2. The pertinent terms of 12 O.S.Supp.1995 § 994(A) provide:

    "*When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment, decree, or final order as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay* and upon an express direction for the filing of a final judgment, decree, or final order. *In the absence of such determination and direction, any*

## I.

## THE ANATOMY OF LITIGATION

¶ 3 Breeding brought this district court action to foreclose a lien upon a home set apart to her former husband in the trial court's divorce decree "free and clear of any claim or right" on her part. *The lien she now seeks to impress was imposed later by this court's May 6, 1986 unpublished opinion.* While the two were still married the house was mortgaged to a bank. That mortgage lien is *conceded* to rank as *first* priority. During the pendency of the divorce proceedings, but before this court's opinion fashioned a lien for Breeding, her former spouse, acting as a single person, mortgaged the property in question to NJH's predecessor entity.

¶ 4 Breeding filed the district court suit *after* the former husband had failed to pay the judgment that was given her by the Supreme Court opinion. She sought (1) *foreclosure of her lien,* (2) a determination of lien priorities and (3) an order requiring marshaling of liens. By its interlocutory order, the nisi prius court *summarily adjudicated* the lien priorities, ranking Breeding's lien as third (or last). Marshaling relief was denied. Later, by the trial court's sheer fiat *the interlocutory order* that set lien priorities came to be "incorporated by reference and made [into] a final judgment." *Breeding's foreclosure claim was never reached for adjudication.* [3]

*order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties,* and the order or other form of decision is subject to revision at any time before the final judgment, decree, or final order adjudicating all the claims and the rights and liabilities of all the parties is filed with the court clerk." (Emphasis supplied.) *See also Tinker Investment Mortgage Corp. v. Midwest City,* 1994 OK 41, 873 P.2d 1029, 1034, 1035.

3. The trial court's "interlocutory summary adjudication," entered March 18, 1994, which established *only* the priority of liens, reserved marshaling of liens for "future adjudication." It termed that order not appealable. Breeding's request to marshal liens was then denied. On February 22, 1995, the trial court's "journal en-

¶ 5 Breeding sought appellate review. NJH moved to dismiss the appeal for want of an appealable order. By its June 27, 1995 disposition this court held the critical nisi prius order to be final and allowed the appeal to proceed. Justice Wilson and I were then in dissent. On July 27, 1995 Breeding's former husband also moved to dismiss by his response to Breeding's amended petition in error. This court *deferred* until the decisional stage consideration of the latter dismissal motion.[4] The Court of Civil Appeals affirmed the trial judge's order *sans any* inquiry into the arguments made in Mr. Breeding's *deferred plea* for dismissal. Because the Court of Civil Appeals failed to re-examine the finality of the nisi prius ruling now before us for review, this court's opinion (on certiorari) should have dealt with the *raised defects* in appellate cognizance.[5]

¶ 6 II.

## THE CRITICAL NISI PRIUS ORDER ON APPEAL IS LESS THAN A COMPLETE ADJUDICATION OF THE ISSUES UPON A SINGLE CLAIM FOR FORECLOSURE AND CANNOT BE TREATED EITHER AS A JUDGMENT OR FINAL ORDER; THE APPEALED ORDER IS HENCE BEYOND THE REACH OF APPELLATE COGNIZANCE

¶ 7 The so-called "journal entry of judgment" resolves only two of the three issues pressed by Breeding's single claim for foreclosure. *It does not dispose of her primary litigation demand—that of foreclosure and sale.* The decision does not hence rise to the dignity of a judgment. It constitutes nothing more than a "midstream" (interlocutory) order.[6] By force of 12 O.S.1991 § 681[7] true judgment cannot be pronounced until *all* the issues between the parties in an entire action have been resolved.[8] There *can be no judg-*

---

try of judgment" recites that Breeding's request for marshaling of liens is "overruled" and states: "The Court ... finds, orders and decrees this Court's previous interlocutory summary adjudication of April 18, 1994 and this Court's denial of [Breeding's] Motion to Reconsider by court minute dated February 2, 1995, are hereby incorporated by reference *and made a final judgment.*" (Emphasis added.) *No ruling was ever made on Breeding's foreclosure quest.*

4. The appellate record discloses NJH responded to Breeding's petition in error by requesting the appeal's dismissal because no foreclosure had been entered below. NJH then filed an amended response challenging appellate jurisdiction for the trial court's failure to rule on Breeding's request for attorney's fee. Mr. Breeding also filed a response urging dismissal of the appeal for want of a foreclosure decree. In a footnote within his response, Mr. Breeding adopted NJH's jurisdictional challenge (for want of an attorney's fee award). After these responses were filed, this court ruled on June 27, 1995, that the trial court's order is appealable as final. *In its second order*, dated August 2, 1995, *this court states:*

"Consideration of the dismissal *motions* contained in the *responses* to the petition in error is deferred to the decisional stage." (Emphasis added.)

The August 2, 1995 order *does not limit consideration of dual dismissal requests* (contained in the responses) to the single issue of Breeding's plea for attorney's fee. *The contrary statement in today's opinion is erroneous.* Nor did the Court of Civil Appeals misunderstand this court's August 2, 1995 order as limiting consideration of the dismissal motions to the single issue of attor-

ney's fee. *The following excerpt* from the Court of Civil Appeals' opinion *supports my view:*

"Marvin and Sharon Breeding filed a response alleging, as NJH had before, that all issues had not been adjudicated because the foreclosure claim remained pending. *This time, the Supreme Court deferred consideration of the motion until the decisional stage.* Such a deferral allows the appeal to proceed. We will address the merits." (Emphasis supplied.)

5. *LCR, Inc. v. Linwood Properties,* 1996 OK 73, 918 P.2d 1388, 1392.

6. *Federal Deposit Ins. Corp. v. Tidwell,* 1991 OK 119, 820 P.2d 1338, 1342 (Opala, C.J., concurring in result); *Reeves v. Agee,* 1989 OK 25, 769 P.2d 745, 757, 758 n. 50; *Eason Oil Co. v. Howard Engineering,* 1988 OK 57, 755 P.2d 669, 671; *Reams v. Tulsa Cable Television, Inc.,* Okl., 604 P.2d 373, 374 (1979); *P.E.A.C.E. Corp. v. Okl. Natural Gas Co.,* Okl., 568 P.2d 1273, 1276 (1977); *Emerson v. Lewis,* Okl., 274 P.2d 529, 531 (1954); *Methvin v. Methvin,* 191 Okl. 177, 127 P.2d 186, 188 (1942); *Hurley v. Hurley,* 191 Okl. 194, 127 P.2d 147, 150 (1942); *Foreman v. Riley,* 88 Okl. 75, 211 P. 495, 496 (1923); *Wells v. Shriver,* 81 Okl. 108, 197 P. 460, 479 (1921).

7. The terms of 12 O.S.1991 § 681 provide:

"A judgment is the *final determination* of the *rights* of the parties in an action." (Emphasis added.)

8. *Eason, supra* note 6 at 671; *Hurley, supra* note 6 at 150; *Methvin, supra* note 6 at 188.

*ment* when the court disposes of no more than *a part of* a single cause of action (claim) tendered to it in the pleadings.[9] A partial adjudication (of less than all issues in the case) is beyond the reach of appellate review unless it is within a class of interlocutory orders appealable by right [10] or satisfies the criteria prescribed in 12 O.S.Supp.1995 § 994(A).[11] A true judgment leaves nothing further to be done but carry it into execution.[12]

¶ 8 *Breeding did not make an effort to amend her district court petition by confining the single foreclosure claim to the priority declaration.* The trial court's attempt summarily to adjudicate the lien priority issue and then convert by fiat its interlocutory order into a "judgment" is a plainly ineffective transmogrification. A nisi prius court is powerless to change a litigant's claim. Because the order tendered for review cannot be elevated to the status of a § 681 or § 952(a) judgment, it falls short of that quality. Neither can this critical nonfinal order, which clearly resolves less than an entire claim, be advanced for a pre-judgment review under the terms of § 994(A).[13]

---

9.  *Reams, supra* note 6 at 374; *LCR, Inc. v. Linwood Properties, supra,* note 5 at 1392.

10. *See* the terms of 12 O.S.1991 § 952(b)(2) and 12 O.S.1991 § 993(A) which provide for appealability of orders discharging, vacating or modifying *provisional* remedies or injunctions.

11. *See* the provisions of 12 O.S.Supp.1995 § 994(A), *supra* note 2.

12. *Hurley, supra* note 6 at 150; *Foreman, supra* note 6 at 496; *Loy v. McDowell,* 85 Okl. 286, 205 P. 1089, 1091 (1922); *Wells v. Shriver,* 81 Okl. 108, 197 P. 460, 472 (1921).

13. *Tinker, supra* note 2 at 1035. *See also Tolson v. United States,* 732 F.2d 998, 1001 (D.C.Cir. 1984), where it is noted that *no appeal* may be advanced under Federal Rule 54(b) [similar to Oklahoma's 12 O.S. § 994(A)] when fewer than all issues based on the same transaction have been resolved.

14. *See* note 3 *supra,* for reference to the trial court's memorial of February 22, 1995.

¶ 19 **III.**

**BECAUSE THE LIEN PRIORITY ISSUE WAS ERRONEOUSLY DISCONNECTED FROM BREEDING'S FORECLOSURE QUEST BY THIS COURT'S MAGIC, ONLY AN ABSTRACT QUESTION OF LAW REMAINS; AN ABSTRACT OR HYPOTHETICAL QUESTION OF LAW THAT IS DETACHED FROM AN EFFECTIVE REMEDY TO BE ADMINISTERED ON REMAND IS NOT REVIEWABLE**

¶ 10 Because the nisi prius court severed *sua sponte* the lien priority plea from Breeding's quest for foreclosure relief *sans* her amendment to the pleadings by arbitrarily entering what was erroneously called its "final judgment" in the case,[14] Breeding *should not* be able to further proceed in this lawsuit on remand, even though today's decision reverses the nisi prius ruling. Detached from foreclosure and magically transformed into a "final judgment," the lien priority resolution will, *on its return to this nisi prius lawsuit,* present but an *abstract* question of law.

¶ 11 This court may not address but viable, lively issues in controversy.[15] It can decide neither abstract nor hypothetical questions that, upon remand, will stand disconnected from and beyond the reach of effective relief.[16] The earlier ruling by this court, which

---

15. *Ashcroft v. Mattis,* 431 U.S. 171, 172, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977); *DeFunis v. Odegaard,* 416 U.S. 312, 316–317, 94 S.Ct. 1704, 1705–1706, 40 L.Ed.2d 164 (1974); *Park View Hospital Trust Authority v. State of Oklahoma ex rel. Department of Labor,* 1996 OK 108, 925 P.2d 541, 544 (Opala, J., concurring in judgment).

16. A viable controversy is one in which an appellate court can grant relief that will be effective on remand. *Morton v. Adair County Excise Bd.,* 1989 OK 118, 780 P.2d 707, 711; *Rogers v. Excise Board of Greer County,* 1984 OK 95, 701 P.2d 754, 761. A dispute ceases to present a lively "case or controversy" when the tendered issues are abstract, hypothetical or have become moot. *Rogers, supra; Lawrence v. Cleveland County Home Loan Authority,* 1981 OK 28, 626 P.2d 314, 315; *Edwards v. Hanna Lumber Co.,* Okl., 415 P.2d 980, 981 (1966); *Payne v. Jones,* 193 Okl. 609, 146 P.2d 113, 116 (1944); *Westgate Oil Co. v. Refiners Production Co.,* 172 Okl. 260, 44 P.2d 993, 994 (1935); *Wallace v. McClendon,* 144 Okl. 39, 289 P. 354 (1930).

treated the nisi prius order as "final" and hence appealable *before* Breeding's foreclosure claim came to be decided, allowed her appeal to tender here but a hypothetical question.[17] This is so because that question can have no separate meaning in the framework of the now-terminated nisi prius case. Breeding had commenced a lawsuit to *foreclose* her lien. Her case, by the magic of an erroneous judicial transformation, became *a terminated action* before foreclosure relief had been either granted or denied. This court's mandate *will not reopen a terminated case.*

## IV.

### SUMMARY

¶ 12 Today's corrective relief, as well as the court's direction for post-remand proceedings, are *inconsistent* with the court's declared view that the nisi prius action came to be terminated when the trial court determined the priority rank of Breeding's lien. Ignoring the *continued pendency of her unadjudicated foreclosure claim,* the court grievously erred by saving this appeal from dismissal. Because the critical nisi prius decision tendered for appellate review leaves undetermined the Breeding claim's *core issue* of foreclosure, I cannot view that order—now on certiorari review—either as final or as a *judgment* in Breeding's action. I would today dismiss her appeal because it is prosecuted from a nonappealable prejudgment order.[18]

¶ 13 I hence recede from the court's pronouncement.

---

**17.** The trial court order sought to be reviewed denies Breeding no more than a *remedy* of post-foreclosure marshaling; *it does not adjudicate her quest for foreclosure.* In foreclosure suits, marshaling is to be considered a *post-judgment* issue. The trial court's consideration of that issue in this case was hence premature. Marshaling governs *the order* in which parts of foreclosed property are subjected to sale. *Vandever Investment Company, Inc. v. Leonhardt Lumber Company,* Okl., 503 P.2d 185, 190–191 (1972).

**18.** It is not too late to dismiss an appeal on certiorari for lack of jurisdiction or mootness. *Stites v. Duit Const. Co., Inc.,* 1995 OK 69, 903 P.2d 293, 296.